## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DWAYNE STAATS,** | : | |
| **Plaintiff** | : | **No. 1:22-cv-01962** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **CLAIRE DEMATTEIS, et al.,** | : | |
| **Defendants** | : | |

### MEMORANDUM

Before the Court are motions to dismiss the amended complaint, filed by Defendants named in the above-captioned action. (Doc. Nos. 23, 24.) Also before the Court is Plaintiff's motion for a temporary restraining order and preliminary injunction. (Doc. No. 37.) For the reasons set forth below, the Court will grant Defendants' motions and deny Plaintiff's motion.

## I. BACKGROUND

### A. Procedural Background

On May 3, 2022,[1] while Plaintiff was in the custody of the Pennsylvania Department of Corrections ("PADOC") and incarcerated at State Correctional

---

[1] Plaintiff's complaint, which was filed as a letter, was docketed on May 5, 2022. However, it is dated May 3, 2022, and, thus, is deemed filed as of that date. See Pabon v. Mahanoy, 654 F.3d 385, 391 (3d Cir. 2011) (stating that "[t]he federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing (citing Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998)).

Institution Benner ("SCI Benner") in Bellefonte, Pennsylvania, he commenced the above-captioned action by filing a pro se complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") in the United States District Court for the District of Delaware ("District of Delaware").  (Doc. Nos. 1, 13.)  Plaintiff subsequently filed an amended complaint (Doc. No. 6) and paid the requisite filing fee.  The action was then transferred to this District on November 7, 2022.  (Doc. No. 13.)

After receiving the transfer order, the Court deemed the amended complaint filed, directed the Clerk of Court to serve, inter alia, a copy of the amended complaint, with waivers of the service of summons, on Defendants.  (Doc. No. 16.) In the interests of efficient administrative judicial economy, the Court requested that Defendants waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  (Id.)  The Court also explained that, if service was unable to be completed due to Plaintiff's failure to properly name the Defendants or provide an accurate mailing address for them, Plaintiff would be required to correct the deficiency and that, failure to do so, may result in dismissal of his claims against Defendants pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  (Id.)

In his amended complaint, Plaintiff names the following individuals as Defendants: Claire DeMatteis ("DeMatteis"), the former Commissioner of the Delaware Department of Corrections ("DDOC"); Jayme Gravell ("Gravell"), Heidi Collier ("Collier"), and Kiley Palson ("Palson"), all of whom are "administrative

personnel" at DDOC; George Little ("Little") and John Wetzel ("Wetzel") former Secretaries of the PADOC.  (Doc. No. 6-2 at 1–2.)  With the exception of Defendant Palson, all of the named Defendants filed waivers on February 23, 2023.[2]  (Doc. Nos. 20, 21.)  Shortly thereafter, these same Defendants filed motions to dismiss Plaintiff's amended complaint, along with supporting briefs.  (Doc. Nos. 23, 24, 25, 27.)  Plaintiff filed responses to their motions (Doc. Nos. 26, 28),[3] as well as a motion seeking the appointment of counsel (Doc. No. 29).  On April 21, 2023, the Court, inter alia, denied without prejudice Plaintiff's motion seeking the appointment of counsel.  (Doc. No. 30.)

---

[2] The Clerk of Court has attempted to serve a copy of Plaintiff's amended complaint, with waivers, on Defendant Palson at both the DDOC address (Doc. No. 17 at 14–16) and the PADOC address (Doc. No. 31). The Clerk of Court has been unable to successfully do so at those addresses. As the Court has previously explained, it is Plaintiff's responsibility to provide the Court with an accurate mailing address for Defendants.  See (Doc. Nos. 16 at 1; 30 at 6). As a result, Plaintiff's request for the entry of default as to Defendant Palson is without merit and will be stricken from the docket.  (Doc. No. 35.)  However, because the Court has a continuing obligation to review complaints brought by prisoners seeking relief against an officer or employee of a governmental entity, see 28 U.S.C. § 1915A(a), the Court will address any claims that Plaintiff's amended complaint has asserted against Defendant Palson in connection with the Delaware Defendants' motion to dismiss.  See (Doc. No. 6-2 at 1 (identifying Defendant Palson's title as "administrative personnel" at the DDOC).

[3]  Although Plaintiff has filed such responses, the Court notes that they consist of only one page and contain neither any substantive argument nor legal support.  (Doc. Nos. 26, 28.)  Plaintiff has, effectively, failed to oppose Defendants' motions to dismiss.  See M.D. Pa. L.R. 7.6.

Finally, on January 8, 2024, Plaintiff filed a motion for a temporary restraining order and preliminary injunction, along with a supporting brief.  (Doc. Nos. 37, 38.)  Approximately one month later, Plaintiff filed a letter titled "GRIEVANCE STATUS/NOTICE OF TRANSFER" addressed to "Ms. Heist," the grievance coordinator at SCI Camp Hill.  (Doc. No. 39 at 1.)  In his letter to Ms. Heist, Plaintiff explains, inter alia, that on January 22, 2024, he was transferred from SCI Camp Hill to a prison in Delaware.  (Doc. No. 39 at 1.)  Plaintiff does not explain how long he will be at the Delaware prison or whether there is any likelihood that he will be transferred back to PADOC custody.  In addition, neither party has since filed anything on the Court's docket.  That said, the Court turns to the allegations in Plaintiff's amended complaint.

### B.    Factual Background

On August 6, 2015, the Community Legal Aid Society, Inc. ("CLASI") filed a complaint alleging, inter alia, that the then-commissioner of the DDOC failed to adequately address the serious mental health needs of DDOC inmates suffering from mental illnesses who were housed in solitary confinement.  See Community Legal Aid Society, Inc. v. Coupe, No. 1:15-cv-00688 (D. Del. filed Aug. 6, 2015); see also (Doc. No. 6-2 at ¶ 34).  In connection with the CLASI action, the DDOC, via its then-commissioner, entered into a proposed settlement agreement and order with CLASI addressing the conditions of restrictive housing in DDOC facilities,

particularly for inmates suffering from mental illnesses.  See Community Legal Aid Society, Inc. v. Coupe, No. 1:15-cv-00688 (D. Del. filed Aug. 31, 2016), ECF No. 38; see also (Doc. No. 6-2 at ¶¶ 35–38 (discussing provisions of the CLASI agreement and order)).  On September 1, 2016, the court approved the CLASI settlement agreement and order.  See Community Legal Aid Society, Inc. v. Coupe, No. 1:15-cv-00688 (D. Del. filed Sept. 1, 2016), ECF No. 40; see also (Doc. No. 6-2 at ¶ 35).[4]

In 2018, the DDOC entered into an "interstate compact contract" with the PADOC.  (Id. at ¶ 39.)  On November 7, 2018, Defendant Gravell announced that the DDOC would be transferring three-hundred and thirty (330) inmates to PADOC facilities (id. at ¶ 11) and that "medical and mental health treatment, education, and other services would continue to be available (id. at ¶ 12).  Plaintiff's amended complaint quotes three (3) provisions contained in the

---

[4]  A copy of the proposed CLASI agreement and order is attached to Defendants DeMatteis, Gravell, and Collier's brief in support of their motion to dismiss.  (Doc. No. 25-1 at 1–17.)  As a general proposition, when the Court is "ruling on a motion to dismiss, it "may not consider matters extraneous to the pleadings."  See Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022) (citation and internal quotation marks omitted).  However, when an extraneous "document is integral to or explicitly relied upon in the complaint, it may be considered without converting the motion to dismiss into one for summary judgment under Rule 56."  See id. (citation and internal quotation marks omitted).  Here, the CLASI agreement and order is integral to and explicitly relied upon in Plaintiff's amended complaint. (Doc. No. 6-2.)

interstate compact contract.[5]  (Id. at ¶¶ 43–45.)

More specifically, Plaintiff quotes Article VI, § 6.2 which states: "[n]othing contained in this AGREEMENT shall be construed to abrogate or impair any other agreement or other arrangement for the confinement, rehabilitation or treatment of inmates now in effect between one of the party signatories to this AGREEMENT and the federal government, any other state, a governmental subdivision of any other state, or any private entity."  (Doc. No. 25-2 at 3, § 6.2); see also (Doc. No. 6-2 at 8, ¶ 43).   Plaintiff also quotes Article XXII, § 22.1 which states: "[c]onfinement in the receiving state will not deprive any inmate of the sending state of any statutory or constitutional right which he would have if confined in the sending state." (Doc. No. 25-2 at 10, § 22.1.)  And, finally, Plaintiff quotes Article XXII, § 22.2, which states: "[t]he sending state shall undertake to defend against all actions or proceedings relating to the legality of detention, sentences, calculation of sentences, transfer procedure and/or alleged prejudice due to the incarceration in another state." (Id. at 10, § 22.2.)   According to Plaintiff, "[t]hrough these articles, [D]efendants DeMatteis, Gravell, Palson, [and] Collier[ ] knew that Delaware prisoners that were transferred to Pennsylvania and housed

---

[5]   A copy of the interstate compact contract is attached to Defendants DeMatteis, Gravell, and Collier's brief in support of their motion to dismiss.  (Doc. No. 25-2.) As noted above, the Court may consider this document in deciding Defendants' pending motions to dismiss because it is integral to and explicitly relied upon in Plaintiff's amended complaint.  See Doe, 30 F.4th at 342.

in their Restrictive Housing Unit [f/k/a] solitary confinement were still supposed to be safeguarded by the United States District Court's agreement and order." (Doc. No. 6-2 at 8–9, ¶ 46.)

In connection with the interstate compact contract, Plaintiff alleges that he was transferred on February 24, 2019, from a DDOC facility to a PADOC facility in Camp Hill, Pennsylvania (i.e., SCI Camp Hill).  (Id. at ¶ 13.)  Upon his transfer to the PADOC, Plaintiff claims that he was immediately placed on the Restricted Release List ("RRL" or "List") and housed in solitary confinement.  (Id. at 13–14 ¶¶); see also id. at ¶ 13 (stating that he was placed on this List without being afforded a hearing or the opportunity to appeal such placement)).

Shortly thereafter, on April 16, 2019, Plaintiff was transferred to another PADOC facility in Albion, Pennsylvania (i.e., SCI Albion), "where under the guise" of the RRL, he was housed in solitary confinement.  (Id. at ¶ 14.)  Plaintiff alleges that, around this same time period, on May 31, 2019, Defendant Collier emailed Defendant Kiley Palson stating, "[t]he [DDOC] would like to reaffirm that we take no disposition in PADOC classification."  (Id. at ¶ 68.)

Plaintiff did not receive any information about how long he might be on RRL placement or how he might be removed from the List.  (Id. at ¶ 15.)  Nevertheless, Plaintiff attempted to appeal his RRL placement using the PA DOC's grievance process; however, his appeal was rejected on the grounds that such placement

7

could not be appealed.  (Id. at ¶ 16.)  In addition, while Plaintiff was on RRL placement, he was not offered more than five (5) hours of "unstructured recreation per week" or any "programs or treatment of any kind."  (Id. at ¶ 17.)  Plaintiff claims that, on numerous occasions, he contacted DDOC officials and expressed how the conditions of the PADOC's restrictive housing was in violation of the CLASI agreement and order.  (Id. at ¶ 18.)

On July 21, 2021, Plaintiff was admitted into a step-down program at a PADOC facility in Collegeville, Pennsylvania.  (Id. at ¶ 19.)  According to the "descriptive plan," and "with support from the Unit Team and PRC approval," an "inmate may be reviewed for RRL removal."  (Id. at ¶ 20.)  Plaintiff was subsequently notified on March 8, 2022 that he had completed the step-down program.  (Id. at ¶ 21.)  However, he was immediately sent to solitary confinement and was informed that Defendant Little had "vetoed the Unit Teams [sic] recommendation and PRC approval for [Plaintiff] to go to general population."  (Id. at ¶ 22.)

Shortly thereafter, on April 14, 2022, Plaintiff was transferred to SCI Benner, (id. at ¶ 23), where he remained on RRL status and was housed in solitary confinement (id. at ¶ 23).  With respect to solitary confinement, Plaintiff alleges that he was: confined to a cell in which he had "very little" room to exercise or walk around (id. at ¶ 24); deprived of social interaction, environmental stimulation, and

proper mental health treatment (id. at ¶ 25); limited to going to the "exercise cage" in the yard "for one hour per weekday" (id. at ¶ 26 (some internal citations omitted)); and restricted to his cell on Saturdays and Sundays for twenty-four (24) hours per day without the opportunity to shower or go to the exercise cage in the yard (id. at ¶ 27).  In addition, Plaintiff asserts numerous "deprivations and inhumane treatment" that he has endured since being housed in solitary confinement within the PADOC. (Id. at ¶ 29 (identifying, among other issues, meals, educational programs, "contact visits," showers, recreation, and property).)

As a result of spending years in solitary confinement, Plaintiff claims that he has experienced, inter alia, mental anguish, short-term memory loss, hallucinations, severe anxiety and will likely continue to experience such debilitating impairments for the rest of his life.  (Id. at ¶¶ 30–31.)  Plaintiff also claims that "[t]he risks" associated with spending such extensive periods of time in solitary confinement are obvious and that, at all relevant times, Defendants knew of such risks.  (Id. at ¶¶ 32–33.)[6]

In support, Plaintiff alleges that Defendant Wetzel "previously testified" that he was aware of "the body of literature describing the effects of long-term solitary confinement[,]" including the research conducted by Dr. Grassian (id. at ¶ 52), "a

---

[6]  It is unclear from the allegations in Plaintiff's amended complaint how long he was in solitary confinement while in the custody of the PADOC.

world renowned expert on the psychiatric effects of solitary confinement . . . ." (id. at ¶ 48).  Plaintiff also alleges that Defendant Wetzel previously admitted that an inmate's mental health should be considered when placing an inmate in long-term solitary confinement.  (Id. at ¶ 53.)

In connection with all of these allegations, Plaintiff sets forth three (3) counts in his amended complaint. The first count asserts a violation of his Eighth Amendment rights against Defendants DeMatteis, Gravell, Collier, and Palson on the basis that they were aware of his unconstitutional conditions of confinement in the PADOC but that they "with[eld] systemic relief due to [him][,]" thereby violating the CLASI agreement and order and interstate compact contract. (Id. at ¶¶ 63–69.) The second count asserts a violation of Plaintiff's Eighth Amendment rights against Defendants Wetzel and Little on the basis that they approved, implemented, and enforced a policy within the PADOC that required RRL inmates to remain in solitary confinement until the Secretary of the PADOC approved their release therefrom and that, as a result of this policy, Plaintiff was indefinitely housed in solitary confinement even though Defendants Wetzel and Little were aware of the "severely negative impact" of such long-term solitary confinement on an inmate's mental health.  (Id. at ¶¶ 71–77.)  And, finally, the third count asserts a violation of Plaintiff's Fourteenth Amendment rights against Defendants Little and Wetzel on the basis that Plaintiff was indefinitely housed in solitary confinement within the

PADOC without any explanation for his RRL status or an opportunity to be heard on, or to challenge, his RRL status.  (Id. at ¶¶ 78–83.)  In connection with all three (3) counts, Plaintiff claims that he has suffered, inter alia, stress, anxiety, depression, and suicidal thoughts for which he seeks monetary damages.  (Id. at ¶¶ 70, 77, 83.)

## II.   LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  And a claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court "accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." See Taksir v. Vanguard Grp., 903 F.3d 95, 96-97 (3d Cir. 2018) (citation and internal quotations omitted).  The court also construes the factual allegations "in the light most favorable to the plaintiff[.]"  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (citation and internal quotations omitted).  The court, however, is not required to credit "conclusions of law" or to

draw "unreasonable factual inferences."  See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 133 (3d Cir. 2006).

Additionally, the United States Court of Appeals for the Third Circuit ("Third Circuit") has outlined a three-step process to determine whether a complaint meets the pleading standard established by Twombly and Iqbal.  See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016).  First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'"  See id. (quoting Iqbal, 556 U.S. at 675) (alterations in original).  Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" See id. (quoting Iqbal, 556 U.S. at 679).  And, third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  See id. (quoting Iqbal, 556 U.S. at 679).

## III.   DISCUSSION

### A.   The Delaware Defendants' Motion to Dismiss

Defendants DeMatteis, Gravell, and Collier ("Delaware Defendants") argue that they are entitled to dismissal from this lawsuit because, inter alia, Plaintiff's amended complaint fails to state a claim under Section 1983, and Plaintiff's claims are barred by the applicable statute of limitations.  (Doc. Nos. 23, 25.)  The Court addresses each of these arguments in turn.

### 1.    Section 1983

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

Here, Plaintiff asserts a violation of his Eighth Amendment rights against the Delaware Defendants and Defendant Palson on the basis that they were aware of his unconstitutional conditions of confinement in the PADOC but that they "with[eld] systemic relief due to [him][,]" thereby violating the CLASI agreement and order and interstate compact contract.  (Doc. No. 6-2 at ¶¶ 63–70.)

### a.     The Interstate Compact Contract

The Delaware Defendants argue that, to the extent that Plaintiff's Eighth Amendment claim is based upon allegations that they violated the interstate compact contract, Plaintiff's amended complaint fails to state a claim upon which relief can be granted.  (Doc. No. 25 at 7.)  The Court agrees.

"Statutes and interstate agreements recognize that, from time to time, it is necessary to transfer inmates to prisons in other States."  Olim v. Wakinekona, 461 U.S. 238, 246 (1983).  As a result, "it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State[,]" as "[c]onfinement in another State . . . is within the normal limits or range of custody which the conviction has authorized the State to impose."  See id. at 247 (citation and internal quotation marks omitted).

Here, Plaintiff's amended complaint alleges that, on February 24, 2019, he was transferred from DDOC custody to PADOC custody pursuant to an interstate compact contract.  (Doc. No. 6-2 at ¶¶ 11, 13, 39).  State statutory authorization for such transfers are set forth by the Interstate Corrections Compact (hereinafter, "ICC"), which has been enacted in both States.  See 61 Pa. C.S.A. §§ 7101–7103 (containing Pennsylvania's ICC); 11 Del.C. §§ 6570–6573 (containing Delaware's

ICC).  Plaintiff appears to claim that violations of the ICC amount to violations of federal constitutional law actionable under Section 1983.

However, courts that have considered similar arguments have rejected them. See, e.g., Smith v. Cummings, 445 F.3d 1254, 1259 (10th Cir. 2006); Ghana v. Pearce, 159 F.3d 1206, 1208 (9th Cir. 1998); Stewart v. McManus, 924 F.2d 138, 142 (8th Cir. 1991).  Such courts have concluded that the ICC does not amount to federal law because the subject matter of the ICC (i.e., the interstate transfer of state prisoners) is not appropriate for congressional legislation, see Ghana, 159 F.3d at 1208, and because the ICC does not have congressional consent, see Stewart, 924 F.2d at 142.  Cf. Cuyler v. Adams, 449 U.S. 433, 440 (1981) (stating that, "where Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause").

Accordingly, because the ICC is not federal law, Plaintiff cannot rely upon Section 1983 to assert a claim based upon an alleged violation of the ICC.  See Archy v. Troxler, No. 20-cv-01030, 2021 WL 75739, at *4 (D. Del. Jan. 8, 2021).

### b.    CLASI Agreement and Order

The Delaware Defendants argue that, to the extent that Plaintiff's Eighth Amendment claim is based upon an allegation that they violated his rights because the PADOC did not follow the CLASI agreement, his claim fails for several reasons. (Doc. No. 25 at 7–9.) The Court agrees.

According to the express terms of the CLASI agreement and order, Plaintiff does not have the right or standing to invoke an alleged breach of the CLASI agreement. See Community Legal Aid Society, Inc. v. Coupe, No. 1:15-cv-00688 (D. Del. filed Sept. 1, 2016), ECF No. 40 at 15–16, ¶ I (providing that "[n]o inmate or person or entity other than Plaintiff [i.e., CLASI] or Plaintiff's successor shall have the right or standing to seek to enforce any term of [the CLASI agreement]"). Only CLASI, the plaintiff in the CLASI action, could have brought suit for breach of the CLASI agreement before its expiration.  See id.; see also id. at 15, ¶ K (stating that the CLASI agreement and order "shall terminate five (5) years from the Effective Date[,]" which was September 1, 2016).[7]  In addition, the DDOC individuals named in this action (Defendants DeMatteis, Gravell, Collier, and Palson) were not named as defendants in the CLASI action, thus "making it

---

[7]  In other words, the CLASI agreement and order terminated in 2021, well before Plaintiff commenced the instant action in the District of Delaware in 2022.

impossible" for them to breach the CLASI agreement and order.  See O'Neil v. May, No. 20-cv-00319, 2020 WL 7027611, at *3 (D. Del. Nov. 30, 2020)

Furthermore, the CLASI agreement and order, while it was in effect, did not apply to Plaintiff when he was in PADOC custody.  Instead, the express terms of the CLASI agreement and order had limited applicability to inmates confined in restrictive housing within the DDOC. See, e.g., Community Legal Aid Society, Inc. v. Coupe, No. 1:15-cv-00688 (D. Del. filed Sept. 1, 2016), ECF No. 40 at 14, ¶ F (providing that "[t]he provisions of the [CLASI agreement and order] apply to any [DDOC] facility where inmates are in Restrictive Housing during the term of [the CLASI agreement and order]").

And, finally, the three (3) ICC Articles cited by Plaintiff do not, as argued by the Delaware Defendants (Doc. No. 25 at 8), broaden the CLASI agreement so as to apply to Plaintiff while he was in PADOC custody.  By way of example, Article VI, § 6.2 provides only that the terms of the ICC would not affect the terms of any other agreement (such as the CLASI agreement and order).   But, again, the CLASI agreement and order does not apply here.  By way of further example, Article VI, § 22.1 provides only that confinement in the receiving state (PADOC) will not deprive any inmate of the sending state (DDOC) of "any statutory or constitutional right which he would have if confined in the sending state."  (Doc. No. 25-2 at 10.)  The CLASI agreement and order, however, does not constitute a statutory right or

constitutional right and, thus, cannot serve as the basis of a Section 1983 claim. And, finally, Article VI, § 22.2 concerns only how the sending state (DDOC) must defend certain actions relating to "the legality of detention, sentences, calculation of sentences, transfer procedures and/or alleged prejudice due to the incarceration in another state." (Id.) It does not, however, pertain to the applicability of the CLASI agreement and order. Thus, the three (3) ICC Articles cited by Plaintiff do not expand the applicability of the CLASI agreement and order such that it would apply, here, to Plaintiff while he was in PADOC custody.

Accordingly, because the CLASI agreement and order does not apply here, and because a breach of that agreement and order cannot serve as the basis of a Section 1983 claim, the Court concludes that Plaintiff's amended complaint fails to state a claim upon which relief can be granted against the Delaware Defendants and Defendant Palson. See Archy v. Troxler, No. 20-cv-01030, 2021 WL 75739, at *4 (D. Del. Jan. 8, 2021).

### c.   Personal Involvement

In addition to the foregoing deficiencies, the Delaware Defendants argue that Plaintiff's amended complaint fails to allege their personal involvement in the alleged violation of his Eighth Amendment rights. (Doc. No. 25 at 9–12.) Generally speaking, the Court agrees. At times in Plaintiff's amended complaint, he has set forth only broad and conclusory allegations against the Delaware Defendants. See,

e.g., (Doc. No. 6-2 at ¶¶ 46, 64–67.)  These allegations, which "are no more than conclusions, are not entitled to the assumption of truth."  See Santiago, 629 F.3d at 130 (citation and internal quotation marks omitted).  Indeed, while the federal pleading standard under Rule 8 "does not require detailed factual allegations, . . . it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  See Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).  That said, however, there are a few, more specific allegations set forth against each Delaware Defendant.  The Court addresses these few allegations below.

Regarding Defendant DeMatteis, Plaintiff's amended complaint alleges that she "has spoken about [the] [ICC] on numerous occasions." (Doc. No. 6-2 at ¶ 42.)[8] Concerning Defendant Gravell, Plaintiff's amended complaint alleges that he "disseminated an announcement stating [that the DDOC] was sending 330 prisoners to facilities through out [sic] Pennsylvania" and that, "as part of the contract with [the PADOC], [the DDOC] will pay $123.00 per inmate per day to the State of Pennsylvania." (Doc. No. 6-2 at ¶¶ 11, 40.) With respect to Defendant Collier, Plaintiff's amended complaint alleges that: (1) she and other DDOC officials "endorsed" the ICC (id. at ¶ 41); and (2) she sent an email to Defendant Palson

---

[8]  Notably, Plaintiff's amended complaint has not provided any factual context for this allegation, such as describing what Defendant DeMatteis said, when she said it, or where she said it. Thus, for these reasons, the Court concludes that Plaintiff's amended complaint fails to allege Defendant DeMatteis' personal involvement in an alleged violation of Plaintiff's Eighth Amendment rights.

stating that the DDOC "would like to reaffirm that we take no disposition in PADOC classification" (id. at ¶ 68). And, finally, regarding Defendant Palson, Plaintiff's amended complaint alleges that, on May 31, 2019, Defendant Collier emailed Defendant Palson stating, "[t]he [DDOC] would like to reaffirm that we take no disposition in PADOC classification." (Id. at ¶ 68.)

Even assuming arguendo that Plaintiff could show their personal involvement in this Section 1983 action based upon the foregoing allegations, it is well-settled that the act of transferring an inmate to a different state, in and of itself, is constitutionally permissible. See Olim, 461 U.S. at 247 (explaining that "it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State[,]" and further explaining that "[c]onfinement in another State . . . is within the normal limits or range of custody which the conviction has authorized the State to impose" (footnote, citation, and internal quotation marks omitted)); see also McKune v. Lile, 536 U.S. 24, 39 (2002) (recognizing that "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise" (citation omitted)); Meachum v. Fano, 427 U.S. 215, 224 (1976) (stating that the United States Constitution does not guarantee that an inmate will "be placed in any particular prison"); Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 225

(3d Cir. 2015) (providing that "courts recognize that a state's authority to place inmates anywhere within the prison system is among a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts" (citation and internal citation and quotation marks omitted)). Therefore, Plaintiff's allegations of Defendants DeMatteis, Gravell, Collier, and Palson's involvement in either speaking about, announcing, endorsing, or receiving an email about the transfer of DDOC inmates to the PADOC fail to, in and of themselves, amount to a constitutional violation under Section 1983.

### d.    Statute of Limitations

Finally, the Delaware Defendants argue that Plaintiff's Eighth Amendment claim is time-barred. (Doc. No. 25 at 13–14.) The Court agrees. As discussed above, Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See Shuman, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). State law, however, determines when a claim accrues; therefore, state law provides "for the length of the statute of the statute of limitations" applicable to a Section 1983 claim. See Wallace v. Kato, 549 U.S. 384, 387 (2007) (citations omitted).

As explained by the Third Circuit, "[a] [S]ection 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of

limitations for personal-injury claims." See Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010) (citation omitted). The applicable state, with respect to the Delaware Defendants, is Delaware, which provides for a two (2)-year statute of limitations for personal injury claims. See Del. Code Ann. tit. 10, § 8119. Accordingly, the statute of limitations for civil rights suits under Section 1983 in Delaware is two (2) years. See Jones v. Kirchenbauer, 858 F. App'x 586, 587 (3d Cir. 2021) (unpublished) (citing, inter alia, McDowell v. Del. State Police, 88 F.3d 188, 190 (3d Cir. 1996)).

However, "the accrual date of a [Section] 1983 cause of action is a question of federal law that is not resolved by reference to state law[.]" See Wallace, 549 U.S. at 388 (emphasis omitted). "Accrual is the occurrence of damages caused by a wrongful act—when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Dique, 603 F.3d at 185 (citation and internal quotation marks omitted). "The cause of action accrues even though the full extent of the injury is not then known or predictable." Wallace, 549 U.S. at 391 (citations and internal quotation marks omitted). Indeed, "[w]ere it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute. . . in the sole hands of the party seeking relief." See id. Thus, "[u]nder federal law, a cause of action accrues when the plaintiff knew or should have known of the injury upon which the action is based."

See <u>Montanez v. Sec'y Pennsylvania Dep't of Corr.</u>, 773 F.3d 472, 480 (3d Cir. 2014) (citation and internal quotation marks omitted); <u>see also Jones</u>, 858 F. App'x at 587 (providing that the limitations period in a Section 1983 action began to run when the plaintiff "became aware, or should have been aware, that the constitutional violation occurred" (citation omitted)).

Here, Plaintiff's amended complaint alleges the following pertinent facts: on November 7, 2018, Defendant Gravell "disseminated an announcement" that the DDOC would be transferring inmates to the PADOC (Doc. No. 6-2 at ¶ 11); Plaintiff was subsequently transferred to the PADOC on February 24, 2019, and was immediately placed on RRL and housed in solitary confinement (Doc. No. 6-2 at ¶¶ 13–14); on April 16, 2019, he was transferred to another PADOC facility, "where under the guise" of the RRL, he continued to be housed in solitary confinement (<u>id.</u> at ¶ 14); because of his placement on RRL, he "contacted [DDOC] officials, and "expressed to them that [PADOC's restrictive housing was] in violation of the C.LA.S.I order" (<u>id.</u> at  ¶¶  15–18); on May 31, 2019, Defendant Collier emailed Defendant Kiley Palson stating, "[t]he [DDOC] would like to reaffirm that we take no disposition in PADOC classification" (<u>id.</u> at ¶ 68); and, finally, on unspecified dates and times, Defendant DeMatteis spoke about the ICC between the DDOC and the PADOC (<u>id.</u> at ¶ 42).

Based upon Plaintiff's allegations, the Court finds that his Eighth Amendment claim against the Delaware Defendants and Defendant Palson appears to have accrued no later than May 31, 2019.  Plaintiff, however, did not file his complaint in the District of Delaware until May 3, 2022 (Doc. No. 1), well beyond the expiration of the applicable two (2) years statute of limitations.  As a result, Plaintiff's Section 1983 claim against the Delaware Defendants and Defendant Palson is time-barred.

> **e.**    **Conclusions as to the Delaware Defendants' Motion to Dismiss**

In accordance with the foregoing, the Court will grant the Delaware Defendants' motion and dismiss Plaintiff's Eighth Amendment claim.  (Doc. No. 23.)  In light of this ruling, the Court need not reach the Delaware Defendants' remaining argument—i.e., that they are entitled to qualified immunity.  (Doc. No. 25 at 14–15.)  Finally, the Court will also dismiss Plaintiff's Eighth Amendment claim against Defendant Palson.

**B.**    **The Pennsylvania Defendants' Motion to Dismiss**

Defendants Wetzel and Little ("Pennsylvania Defendants") argue that Plaintiff's Eighth Amendment and Fourteenth Amendment claims should be dismissed against them for failure to state a claim upon which relief can be granted.  (Doc. Nos. 24, 27.)  The Pennsylvania Defendants address each claim in turn, and the Court will do the same.

### 1.      Eighth Amendment

Regarding Plaintiff's Eighth Amendment claim, the Pennsylvania Defendants set forth two (2) arguments.  The first is that Plaintiff's placement on the RRL does not violate the Eighth Amendment.  (Doc. No. 27 at 6.)  The second is that there are no allegations of their personal involvement with respect to the conditions of confinement Plaintiff faced while on RRL.  (Id. at 7–9.)

While the Court agrees with the Pennsylvania Defendants that mere placement on the RRL does not violate the Eighth Amendment, see, e.g., Booze v. Wetzel, 2014 WL 65283, at *11 (M.D. Pa. Jan. 8, 2014), the Court recognizes that prolonged placement in solitary confinement due to an inmate's RRL status can be sufficient to state a claim under the Eighth Amendment.  See, e.g., Clark v. Coupe, 55 F.4th 167, 179–80 (3d Cir. 2022); Palakovic v. Wetzel, 854 F.3d 209, 226 (3d Cir. 2017).  The Pennsylvania Defendants also recognize this principle, however, and argue that, in order for Plaintiff to state such a claim, he must allege not only facts that he was forced to endure such unconstitutional conditions of confinement but also facts that the Pennsylvania Defendants were personally involved in the alleged violation of his constitutional rights.  (Doc. No. 27 at 7.)  This is because, Defendants contend, a defendant cannot be held liable for violations under Section 1983 unless he had personal involvement with such violations.  (Id.)  The Court agrees.

25

In the context of Section 1983, the Third Circuit has recognized two (2) theories of supervisory liability.  See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Under one theory, a supervisor can be held liable if it is shown that he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."   See id. (citation and internal quotation marks omitted) (alteration in original); Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016).  Under the other theory, a supervisor can be held liable if it is shown that he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See A.M. ex rel. J.M.K., 372 F.3d at 586; Parkell, 833 F.3d at 330.

Here, there no well-pleaded allegations in Plaintiff's amended complaint that would raise the inference that Plaintiff  has established either one of these theories of supervisory liability against the Pennsylvania Defendants.  At most, Plaintiff's amended complaint alleges that: (1) the Pennsylvania Defendants approved, implemented, and enforced a policy within the PADOC that required RRL inmates to remain in solitary confinement until the Secretary of the PADOC approved their release therefrom and that, as a result of this policy, Plaintiff was indefinitely housed in solitary confinement, even though they were aware of the "severely negative impact" of such long-term solitary confinement on an inmate's mental health (Doc.

No. 6-2 at ¶¶ 71–77); and (2) Defendant Little "vetoed the Unit Teams [sic] recommendation and PRC approval for [Plaintiff] to go to general population" (Doc. No. 6-2 at ¶ 22).

While Plaintiff's amended complaint points to an alleged policy, there are no facts to show how the Pennsylvania Defendants were deliberately indifferent to consequences flowing from that policy.  In addition, while Plaintiff's amended complaint alleges that Defendant Little "vetoed the Unit Teams [sic] recommendation and PRC approval for [Plaintiff] to go to general population" (Doc. No. 6-2 at ¶ 22), Plaintiff does not specify: when Defendant Little "vetoed" the recommendation; how long Plaintiff had been in solitary confinement in the PADOC up until that point; whether Defendant Little knew of the duration of Plaintiff's solitary confinement; or whether Defendant Little was aware of any other conditions of Plaintiff's solitary confinement.  As a result, the Court finds that Plaintiff's allegations against the Pennsylvania Defendants are too broad and generalized to show their personal involvement in a violation of Plaintiff's Eighth Amendment rights.  See Tucker v. Wetzel, No. 22-cv-00631, 2023 WL 322442, at *6 (M.D. Pa. Jan. 19, 2023) (stating that "[t]here [were] no allegations in the complaint that Wetzel and Little were aware of the conditions of [the plaintiff's] confinement beyond the fact of his solitary confinement[,]" that the plaintiff's "conditions of confinement claim [was] based solely on the fact that Wetzel and Little held the

supervisory role of secretary of the DOC" and that "this is not a sufficient basis to allege Wetzel and Little's personal involvement" in the plaintiff's Eighth Amendment conditions of confinement claim).

Accordingly, the Court will grant the Pennsylvania Defendants' motion on this basis and dismiss Plaintiff's Eighth Amendment claim. However, the Court will grant Plaintiff leave to file an amended pleading in order to attempt to show the personal involvement of the Pennsylvania Defendants in the alleged violation of Plaintiff's Eighth Amendment rights.

## 2.    Fourteenth Amendment

Regarding Plaintiff's Fourteenth Amendment claim, the Pennsylvania Defendants argue that the amended complaint fails to state a claim upon which relief can be granted because Plaintiff's allegations show that he was afforded due process in connection with his RRL status. (Doc. No. 27 at 6.) The Court agrees.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" See U.S. Const. amend. XIV, § 1. "The core concept of due process is protection against arbitrary government action" and, as that core concept has developed over time, "it has come to have both substantive and procedural components." Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 658 (3d Cir. 2011) (citation and internal citation omitted). The procedural component "governs the manner in which the government

28

may infringe upon an individual's life, liberty, or property[,]" see id. at 662, and the substantive component "limits what government may do regardless of the fairness of procedures that it employs[.]"  See Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) (citation omitted).

To state either a procedural or substantive due process claim, a plaintiff must establish, as a threshold matter, that he has was deprived of an individual interest that is encompassed by the Fourteenth Amendment's protection of life, liberty, and property.  See McCurdy v. Dodd, 352 F.3d 820, 825–26 (3d Cir. 2003) (explaining that, in Section 1983 actions, courts must address the threshold issue of whether the alleged due process right implicates a constitutional right at all); Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (stating that, in order for a plaintiff to plausibly state a claim under Section 1983 for the "deprivation of procedural due process rights, the plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law" (citation and internal quotation marks omitted)); Skiles v. City of Reading, 449 F. App'x 153, 157 (3d Cir. 2011) (unpublished) (providing that, in order for a plaintiff to plausibly state a claim under Section 1983 for the deprivation of substantive due process rights, the plaintiff must allege that (1) "he has a protected constitutional interest at issue" and (2) government employees engaged in conduct

that "shocks the conscience[,]" which is a standard that seeks to protect an individual from "arbitrary action of government" (citation and internal citations and internal quotation marks omitted)).

Assuming <u>arguendo</u> that Plaintiff's confinement in the PADOC implicates a protected liberty interest,[9] the Court generally observes that the Third Circuit has held that the periodic review offered to Pennsylvania inmates who are indefinitely confined in administrative custody satisfies the requirements of due process. <u>See</u>, <u>e.g.</u>, <u>Shoats</u>, 213 F.3d at 144–47; <u>Washington-El v. Beard</u>, 562 Fed. App'x 61, 63 (3d Cir. 2014) (unpublished); <u>Bowen v. Ryan</u>, 248 F. App'x 302, 304 (3d Cir. 2007) (unpublished).  Here, Plaintiff's amended complaint broadly claims that he "has not been permitted any type of process whatsoever." (Doc. No. 6-2 at 16.)  In support,

---

[9]  The Third Circuit has recognized that placement on RRL does not implicate a constitutionally protected liberty interest.  <u>See</u> <u>Bowen v. Ryan</u>, 248 F. App'x 302, 304 (3d Cir. 2007) (unpublished).  However, the Third Circuit has also recognized that prolonged and indefinite solitary confinement may give rise to a due process liberty interest in some circumstances. <u>See</u> <u>Porter v. Pa. Dep't of Corrs.</u>, 974 F.3d 431, 450 (3d Cir. 2020) (concluding that prison officials were not entitled to qualified immunity where the officials had "fair warning" that the inmate, who had spent thirty-three (33) years in solitary confinement, had a due process liberty interest in avoiding further solitary confinement); <u>Shoats v. Horn</u>, 213 F.3d 140, 143–44 (3d Cir. 2000) (concluding that the inmate, who had spent eight (8) years in solitary confinement in administrative custody with no prospect of immediate release in the near future had a protected liberty interest).  Here, the Court's docket reflects that, on January 22, 2024, Plaintiff was transferred from SCI Camp Hill to a prison in Delaware. (Doc. No. 39 at 1.)  It is unclear how long Plaintiff was in solitary confinement while in the custody of the PADOC or whether he will be returning to the PADOC.

Plaintiff alleges that, following his placement on RRL, he was not afforded the opportunity to be heard or the right to file an appeal. (Id. at ¶¶ 13, 15–16.) However, his amended complaint simultaneously claims that he was admitted into a step-down program (Doc. No. 6-2 at ¶ 19), which—"with support from the Unit Team and PRC approval"—he was afforded the opportunity to "be reviewed for RRL removal[,]" see (id. at ¶ 20). In support, Plaintiff alleges that he completed the step-down program (id. at ¶ 21), but that, ultimately, he was not removed from the RRL because Defendant Little "vetoed the Unit Teams [sic] recommendation and PRC approval for [Plaintiff] to go to general population" (id. at ¶ 22).

Based upon these allegations, the Court is inclined to agree with the Pennsylvania Defendants that Plaintiff's amended complaint has raised the inference that he was afforded due process here. See Shoats, 213 F.3d at 144 (explaining that when an inmate is placed in solitary confinement for administrative reasons, "informal, nonadversary review at which [the inmate] has opportunity to state his views comports with the requirements of due process[,]" and that a "detailed adversary proceeding" is not required (citation and internal quotation marks omitted)). That said, it is unclear from the allegations in Plaintiff's amended complaint when, exactly, he was afforded the opportunity to have his RRL status reviewed or what occurred during the course of the step-down program. Accordingly, the Court will grant the Pennsylvania Defendants' motion to dismiss,

but will afford Plaintiff the opportunity to file an amended pleading in order to expand upon the factual allegations underpinning his Fourteenth Amendment claim.

### C.   Leave to Amend

The next issue is whether Plaintiff should be granted leave to amend his amended complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

32

In accordance with this standard, the Court cannot say that granting Plaintiff leave to amend his Eighth and Fourteenth Amendment claims against the Pennsylvania Defendants would be futile and, thus, the Court will grant Plaintiff leave to file a second amended complaint in order to attempt to cure the deficiencies identified above.  Plaintiff is advised that the second amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint, the amended complaint, or any other document already filed.  The second amended complaint shall set forth the claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

However, with respect to Plaintiff's Eighth Amendment claim against the Delaware Defendants, the Court concludes that granting Plaintiff any further leave to amend would be futile.  Accordingly, Plaintiff's Eighth Amendment claim against Defendants DeMatteis, Gravell, Collier, and Palson will be dismissed from this action with prejudice.

### D.     Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction

On January 8, 2024, Plaintiff filed a motion for a temporary restraining order and preliminary injunction, along with a supporting brief, arguing that, during his incarceration at SCI Camp Hill, he was harassed and retaliated against by having his personal property destroyed or thrown away and by being placed in a cell where he could not hear anything because of an exhaust fan and where he could not see anything because of dim lights.  (Doc. Nos. 37, 38.)  In connection with this argument, Plaintiff requests that the Court issue an order reassigning Lieutenant Elwell and Timpe (presumably those who are harassing him and retaliating against him) to another building at SCI Camp Hill.  (Doc. Nos. 37 at 1; 38 at 2.)

Having reviewed Plaintiff's motion and relevant authorities, the Court will not grant Plaintiff the extraordinary relief that he seeks.  The Court begins its discussion with the observation that "[t]he standard for analyzing a motion for a temporary restraining order is the same as that for a motion seeking a preliminary injunction."  See Freedland v. Mattingly, No. 1:20-cv-00081, 2020 WL 1984172, at *1 (M.D. Pa. Apr. 27, 2020) (citations omitted).  As a result, the Court will refer to Plaintiff's request for relief as preliminary injunctive relief.

 "Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances."  Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citation and internal quotation marks omitted); Doe by &

34

through Doe v. Boyertown Area Sch. Dist., 897 F.3d 518, 526 (3d Cir. 2018) (reiterating that "[p]reliminary injunctive relief is an extraordinary remedy" (citation and internal quotation marks omitted)).   In determining whether to grant such preliminary injunctive relief, the Court considers the following four factors: (1) the likelihood that the moving party will prevail on the merits at a final hearing; (2) the extent to which the moving party is being irreparably harmed by the complained-of-conduct; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest.   See Ramsay v. Nat'l Bd. of Med. Examiners, 968 F.3d 251, 256 (3d Cir. 2020), cert. denied, 141 S. Ct. 1517 (2021).

"The first two factors are prerequisites for a movant to prevail."   Holland v. Rosen, 895 F.3d 272, 286 (3d Cir. 2018) (citations omitted).   Thus, "[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."   See Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017).   Ultimately, it is the moving party who bears the burden of demonstrating that these factors have been satisfied.   See Holland, 895 F.3d at 285 (explaining that preliminary injunctive relief does not issue "'unless the movant, by a clear showing, carries the burden of persuasion'" (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam))).

Upon consideration of this standard, the Court finds that Plaintiff has not demonstrated that he is entitled to the preliminary injunctive relief that he requests in his motion. "'While '[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally,' an injunction should not issue when 'it deals with a matter lying wholly outside the issues in the suit.'" Pinson v. United States, No. 17-cv-00584, 2017 WL 5158628, at *6 (M.D. Pa. Nov. 7, 2017) (quoting De Beers Consolidated Mines v. United States, 325 U.S. 212, 220 (1945)); Adams v. Freedom Forge Corp., 204 F.3d 475, 489–90 (3d Cir. 2000) (concluding that a preliminary injunction was not appropriate where the harm alleged in the request for preliminary injunctive relief was "insufficiently related to the complaint and [did] not deserve the benefits of protective measures that a preliminary injunction affords" (citations omitted)).

Here, the complained-of-conditions in Plaintiff's amended complaint (i.e., his transfer from the DDOC to the PADOC and his subsequent placement in solitary confinement due to his RRL status) do not pertain to the complained-of-conditions in his instant motion seeking preliminary injunctive relief (i.e., the alleged harassment and retaliation of non-defendants who destroyed his personal property and placed him in a loud and dimly lit cell). Compare (Doc. No. 6-2) with (Doc. Nos. 37, 38). Consequently, the Court concludes that the nature and scope of

Plaintiff's request for injunctive relief is not sufficiently related to the allegations in his amended complaint.

Even assuming arguendo, however, that Plaintiff could show a sufficient relationship between his amended complaint and the nature of the preliminary injunctive relief he seeks, the Court concludes that he is not entitled to such relief because he has not shown that he is likely to succeed on the merits or that he will suffer irreparable harm if the preliminary injunction is not issued. As discussed above, Plaintiff's amended complaint fails to state Eighth and Fourteenth Amendment claims upon which relief can be granted against the named Defendants. Although Plaintiff will be granted leave to file an amended pleading against the Pennsylvania Defendants, until Plaintiff has done so, the Court cannot say that he is likely to succeed on the merits. In addition, the Court finds that Plaintiff has not shown that there is a threat of immediate irreparable injury. See Cont'l Grp., Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980) (stating as follows: "[t]he requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury or a presently existing actual threat . . . " (citation and internal quotation marks omitted)). In fact, it appears that any such threat is now moot, as Plaintiff has been transferred from SCI Camp Hill to a prison in Delaware. (Doc. No. 39 at 1); see also Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698–99 (3d Cir. 1996) (explaining that "[i]f developments occur during the course of

37

adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot").

Accordingly, for all of these reasons, the Court will deny Plaintiff's motion for preliminary injunctive relief.  (Doc. No. 37.)  Not only does Plaintiff's motion pertain to allegations and relief that are outside the scope of his amended complaint, but his motion falls well-short of demonstrating a reasonable likelihood that he will succeed on the merits or will suffer irreparable harm if the injunction is not issued, elements that are essential to the Court granting such extraordinary relief.

## IV.   CONCLUSION

To conclude, the Court will grant Defendants' motions to dismiss Plaintiff's amended complaint.  (Doc. Nos. 23, 34.)  In addition, the Court will grant Plaintiff an opportunity to amend his pleading as to the Pennsylvania Defendants.  Finally, the Court will deny Plaintiff's motion for a temporary restraining order and preliminary injunction. (Doc. No. 37.)  An appropriate Order follows.

Dated: February 27, 2024                    s/ Sylvia H. Rambo
                                            SYLVIA H. RAMBO
                                            United States District Judge