UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DWAYNE STAATS,

            Plaintiff,

            v.

GEORGE LITTLE, *et al.*,

            Defendants.

CIVIL ACTION NO. 1:22-cv-1962

(SAPORITO, J.)

## MEMORANDUM

Plaintiff Dwayne Staats has filed a second amended complaint alleging that he was denied due process before being placed in solitary confinement at several Pennsylvania prisons, and that the conditions of confinement were unconstitutional. Defendants move to dismiss the complaint for failure to state a claim. (Doc. 46). Finding that the complaint states a due process claim against defendant George Little only, the Court grants the motion in part.

## I. BACKGROUND

Staats was one of 330 inmates temporarily transferred from the Delaware Department of Corrections ("DDOC") to the Pennsylvania Department of Corrections ("PDOC"), following a litigation settlement in which the DDOC agreed to improve the conditions of restrictive housing

in its facilities. *See* (Doc. 25-1, Doc. 40 at 4-7). Staats began this case on May 5, 2022, by filing a complaint against various DDOC and PDOC officials complaining of his conditions of confinement in Pennsylvania. On February 27, 2024, the Court dismissed the operative complaint, but granted Staats leave to file a second amended complaint against the "Pennsylvania Defendants": John Wetzel, previously the Secretary of Corrections, and George Little, his successor. *See* (Doc. 41). Staats filed his second amended complaint on April 2, 2024.

The second amended complaint alleges as follows: In February 2019, pursuant to PDOC policy, a "facility manager" could recommend placement on the Restricted Release List ("RRL") for an inmate who "posed a threat to the secure operation" of the prisons, if transferring the inmate would not alleviate the security concern. That recommendation would be forwarded to various PDOC officials and ultimately to the Secretary of Corrections, who made the final determination on the inmate's RRL status.

On February 24, 2019, Staats was transferred from a Delaware prison to a Pennsylvania prison (SCI-Camp Hill) and immediately placed on the RRL. Staats was granted no notice, hearing, or opportunity to

challenge his RRL placement. He attempted to appeal his placement, but the appeal was rejected on the grounds that RRL placement could not be appealed. He received no indication of how long he would be held on RRL, nor any "comprehensive plan/criteria" for how he could be removed.

Between February 24, 2019, and July 2021, pursuant to his RRL status, Staats was held in solitary confinement. He was confined to a 68 square foot cell for at least 23 hours per day, and could only communicate with other inmates by yelling, at the risk of incurring a misconduct charge. He was subjected to strip-searches each time he left the cell. He was not permitted in-person visits, even if the visitor was behind a glass. He was granted one hour of yard time on weekdays[1] and received no "programs or treatment of any kind."

On July 21, 2021, Staats was admitted to a "step down" program at another prison, SCI-Phoenix[2]. The "descriptive plan" for this program

---

[1] Staats also alleges that he was "placed in a small locked cage/kennel during the limited time he had for recreation." It is unclear whether this describes the conditions during "yard time," or whether this supplemented the yard time.

[2] Staats spent time at SCI-Camp Hill, SCI-Phoenix, SCI-Albion, and SCI-Benner. He does not allege any differences in the conditions of confinement among these prisons, except to the extent he was admitted

*(continued on next page)*

indicated that "with support [of] the unit team and [Prisoner Review Committee] approval," inmates may be "reviewed" for removal from RRL. The details of the step-down program are somewhat unclear, but Staats enjoyed greater freedom. For roughly nine months, he was granted unlimited kiosk access, commissary access, three phone calls a day, and two video visits a week. During this time, he "moved through the building without chains or shackles," and "walked amongst inmates, civilian staff and guards without incident," receiving "no negative infractions."

On March 8, 2022, the unit manager notified Staats that he had completed the step-down program, and that the Prisoner Review Committee would support his placement in the general population. However, several days later, Staats was told he "had to be taken to isolation pending transfer." While in isolation, he received a letter indicating that Secretary Little had "vetoed" his placement in the general population, and he would be placed back on RRL. The letter did not explain the reason for the decision and Staats had no way to contest it.

On April 12, 2022, Staats was transferred to SCI-Benner, where he

---

to and removed from the step-down program.

was again held in solitary confinement. On August 22, he was transferred back to SCI-Camp Hill and placed in solitary confinement in the "IMU"[3]. Despite inquiries with the "administration" of each prison, Staats was not told why he had been sent back to solitary confinement. Finally, on January 25, 2024, he was transferred back to a prison in Delaware, having spent most of the prior five years in solitary confinement in Pennsylvania prisons. He alleges that he has suffered "acute mental anguish," anxiety, and memory loss, among other injuries.

Staats further alleges that Wetzel knew of risks posed by prolonged solitary confinement. On this topic, Staats directs the Court to *Johnson v. Wetzel*, 209 F. Supp. 3d 766 (M.D. Pa. 2016), where the court preliminarily enjoined Wetzel, and other defendants, from continuing solitary confinement for a plaintiff who had been confined there for 36 years. In that case, the court found that Wetzel "knows well the risks inherent in prolonged isolation," and specifically that he was familiar with academic literature setting forth the "significant mental health

---

[3] Staats does not define the "IMU," nor specifically describe the conditions there, but the Court infers that this acronym refers to the "Intensive Management Unit." *See, e.g., Rivera v. Luquis*, No. 23-CV-4657, 2024 WL 4609574, at *1 (E.D. Pa. Oct. 29, 2024).

risks attending extended isolation." 209 F. Supp. 3d at 779.

Staats asserts an Eighth Amendment conditions of confinement claim against Wetzel, and Fourteenth Amendment due process claims against Wetzel and Little.

## II. LEGAL STANDARDS

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195

(3d Cir. 2007)). The Court also disregards allegations made only in a prior complaint, *see Argentina v. Gillette*, 778 F. Appx 173, 175 n.3 (3d Cir. 2019), and any new factual allegations made in the brief opposing the motion to dismiss, *see Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 104 (3d Cir. 2016) (citation omitted).

Staats brings this action under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further,

"[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III.  DISCUSSION

Defendants argue that the complaint must be dismissed because Staats has not alleged the requisite personal involvement to establish defendants' liability for his conditions of confinement, nor plausibly alleged a denial of his due process rights.

### A. Conditions of Confinement

"The Eighth Amendment 'prohibits any punishment which violates civilized standards and concepts of humanity and decency.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Young v. Quinlan,* 960 F.2d 351, 359 (3d Cir. 1992)). To evaluate an Eighth Amendment claim

challenging prison conditions, the Court applies a two-part test: "(1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Johnson v. Pennsylvania Dep't of Corr.*, 846 F. App'x 123, 128 (3d Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Prolonged confinement similar to what Staats alleges has repeatedly been found sufficiently "serious"[4], and defendants do not request dismissal on that ground. Rather, they argue that Wetzel's[5] general knowledge of the risks of prolonged solitary confinement and his

---

[4] *See, e.g., Watson v. Wetzel,* No. 2:23-CV-3246, 2024 WL 5096209, at *6-7 (E.D. Pa. Dec. 12, 2024) (five years in solitary confinement); *Wayne v. Clark*, No. 2:21-CV-4209, 2022 WL 17993131, at *5 (E.D. Pa. Dec. 29, 2022) (same); *Noble v. Wetzel*, No. 2:18-CV-01160-MJH, 2020 WL 3211893, at *5 (W.D. Pa. May 11, 2020), report and recommendation adopted, 2020 WL 3196261 (W.D. Pa. June 15, 2020), aff'd, No. 22-1328, 2022 WL 16707071 (3d Cir. Nov. 4, 2022).

[5] Although defendants' motion presumes that the Eighth Amendment claim is pled against Wetzel and Little, the Court's own review of the complaint indicates that the claim is intended against Wetzel only. *Compare* (Doc. 43 at 9 (directing relevant allegations against Wetzel and requesting judgment against Wetzel on the Eighth Amendment claim)) with (Doc. 43 at 14-15 (requesting judgment against both defendants on the Fourteenth Amendment claim)).

role in Staats's initial RRL placement do not raise an inference of deliberate indifference to Staats's health or safety. The Court agrees.

Staats alleges that under the operative policy, Wetzel made the "final determination" for every inmate's initial placement on the RRL. However, while prolonged solitary confinement may trigger Eighth Amendment protections, short-term placement generally does not, so an inmate's initial placement on the RRL does not itself support an Eighth Amendment claim. *See*, *e.g.*, *Bramble v. Wetzel,* No. 4:20-CV-2394, 2022 WL 55021, at *7 (M.D. Pa. Jan. 5, 2022); *Booze v. Wetzel*, No. 1:13-cv-02139, 2014 WL 1515562, at *4 (M.D. Pa. Apr. 17, 2014). Although Wetzel knew of the general risks of prolonged confinement, nothing in the amended complaint indicates that the initial placement reflected a willful disregard for Staats's safety. And while Staats allegedly remained in solitary confinement from February 2019 through July 2021, nothing in the amended complaint indicates that Wetzel exerted any further influence over Staats's conditions of confinement.

The Court is mindful that given the circumstances of Staats's confinement and his allegations regarding the lack of due process, it may be difficult for him to ascertain who was responsible for his prolonged

confinement and whether that conduct reflected deliberate indifference. Accordingly, this claim will be dismissed without prejudice, and Staats may seek leave to amend the complaint if discovery reveals additional facts supporting an Eighth Amendment claim. However, the complaint as pled does not state a claim against Wetzel.

### B. Due Process

Next, Staats asserts Fourteenth Amendment due process claims against Wetzel and Little. "Due process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Prolonged solitary confinement may implicate a protected liberty interest. *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020). In such cases, the Fourteenth Amendment requires, at minimum, an "'informal, nonadversary review' at which the prisoner has the opportunity to state his views." *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

Initially, the Court notes that the claim cannot proceed against

Wetzel as pled, because Wetzel's initial decision to place Staats on the RRL does not itself create a protected liberty interest. *See*, *e.g.*, *Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010). As with Staats's Eighth Amendment claim, nothing in the second amended complaint indicates Wetzel's personal involvement in any due process issues arising from his prolonged confinement.

Staats's claim against Little is a different matter. The complaint raises a plausible inference that Little's decision to return Staats to solitary confinement imposed an "atypical and significant hardship" on Staats. Although defendants note that Staats was "afforded a great deal of (relative) freedom" in the step-down program, they do not dispute that Staats had a protected liberty interest.[6]

_____

[6] The complaint indicates that after arrival in Pennsylvania, Staats spent approximately 29 months in solitary confinement, then nine months in the comparatively permissive "step down" program, then, following Little's veto, a further 22 months in solitary confinement, before he was transferred back to Delaware. The Third Circuit Court of Appeals has not precisely defined the length of solitary confinement needed to implicate a liberty interest. *See Porter*, 974 F.3d at 449 (listing cases in which solitary confinement for a year or more deprived plaintiffs of a liberty interest); *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 561 (3d Cir. 2017) (six to eight years was sufficient); *Washington-El v. DiGuglielmo*, 419 F. App'x 275, 278 (3d Cir. 2011) (17 months in restrictive housing was insufficient). Given that Staats had already spent

*(continued on next page)*

Instead, defendants request dismissal on the basis that Staats received due process. They argue that the Court should infer appropriate process from the fact that after Little's veto, Staats "expressed to PRC on numerous occasions"[7] the mental strain of having "step down" privileges granted to him and then revoked. However, within the same paragraph, Staats alleges that "[n]one of the PRC . . . knew why [he] was sent [to an IMU]" after the step-down program, and that he had no notice of the reason and "no way to contest" that placement. Although the Constitution requires only "informal" review, it still requires that the inmate receive "some notice" of the charges against him, an opportunity to "present his views to the prison official charged with deciding whether to transfer him to administrative segregation," and that the decisionmaker review the evidence submitted. *Shoats*, 213 F.3d at 144 (quoting *Hewitt*, 459 U.S. at 476). The second amended complaint does

---

significant time in solitary confinement at the time of Little's decision, and given the severity of the conditions he alleges, particularly that he was denied "treatment of any kind," the Court will not dismiss the claim on this basis.

[7] Defendants also interpret Staats to concede that he received "opportunities 'to be reviewed for RRL removal'" by the PRC. But Staats specifically alleges that the "descriptive plan" for the RRL policy called for these opportunities, not that he actually received them.

not support an inference that Staats had appropriate notice or opportunity to contest Little's determination, or that Staats's objections to apparently unknowing officers would have been incorporated in Little's review.

Defendants argue that Staats's second amended complaint retains the same deficiencies as his last one, from which the Court inferred that Staats received due process because he was initially "admitted" to the step-down program. *See* (Doc. 40 at 30-31). Although the complaints are similar, the operative complaint does not permit the same inference. Even if Staats received due process *before* the step-down program, his description of completing that program without any "negative infraction" — only to receive a letter stating that Little had vetoed his placement in general population — supports an inference that he did not receive appropriate notice or an opportunity to contest his return to solitary confinement.

## IV.  CONCLUSION

For these reasons, Staats will be permitted to proceed on a Fourteenth Amendment due process claim against defendant Little. Defendants' motion will be granted as to all other claims. An appropriate

order follows.

Dated: December 27, 2024                    *s/Joseph F. Saporito, Jr.*
                                            JOSEPH F. SAPORITO, JR.
                                            United States District Judge