**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

DWAYNE STAATS,

Plaintiff,

v.

GEORGE LITTLE,

Defendant.

CIVIL ACTION NO. 1:22-cv-01962

(SAPORITO, J.)

**MEMORANDUM**

Dwayne Staats alleges that George Little, the former Secretary of the Pennsylvania Department of Corrections, placed him in administrative segregation without due process. Both parties have moved for summary judgment. (Docs. 72, 82). Because the record shows that Staats received periodic reviews of his custody status, and he has not presented any evidence that those reviews were constitutionally deficient, the Court will grant summary judgment to Little.

## I. BACKGROUND

Staats was one of 330 inmates temporarily transferred from the Delaware Department of Corrections to the Pennsylvania Department of Corrections, following a litigation settlement in which the former agreed to improve the conditions of restrictive housing in its facilities. *See* (Doc.

25-1, Doc. 40 at 4-7). In the operative complaint (Doc. 43), Staats alleges that upon arrival in Pennsylvania in February 2019, he was placed in a highly restrictive form of segregated custody without notice or an opportunity to contest his placement. Although Staats completed a "step-down" program designed to facilitate his entry into the general population, defendant Little allegedly vetoed his general population placement in March 2022, and returned him to solitary confinement until January 25, 2024, when he was transferred back to Delaware.

After Little moved to dismiss the operative complaint, Staats was ultimately permitted to proceed on a Fourteenth Amendment claim for monetary damages against Little. *See* (Docs. 51, 52). After the close of discovery, both parties moved for summary judgment, and the motions are ripe for resolution.

## II. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a

genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## III. Material Facts

Staats's statement of material facts, and his counterstatement in opposition to Little's motion, refer only sporadically to evidence. *See* (Docs. 74, 87). However, Staats did submit evidence as attachments to his motion papers, and we have reviewed and considered this evidence in evaluating the parties' motions. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Where Staats has not presented competent evidence to demonstrate a genuine dispute of material fact, Little's properly supported fact statements are deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1.

### A. Restricted Release List

This case concerns Staats's placement on the Restricted Release

List ("RRL") within the DOC. The RRL "is intended to be the final recourse for those inmates who have proven themselves to be an unmanageable threat to others, the facility, and/or the public." *See* (Doc. 83-2, DC-ADM 802, § 1.C).[1] An inmate on the RRL must be held in Administrative Custody ("AC"), which involves solitary confinement and the deprivation of certain privileges afforded to the general population. *See id.*, § 3.A; (Doc. 73-1). Until April 2022, an inmate could only be removed from the RRL by the Secretary; after that time, removal was at the final discretion of a deputy secretary. *See* (Docs. 83-1, 83-2, § 4.B).

DOC policy generally dictates that inmates in AC, including those on the RRL, have their status reviewed at meetings with a Program Review Committee ("PRC") at least every 90 days. *See id.*, § 2. Although non-RRL inmates have a procedure to appeal their AC status, RRL status is only subject to periodic "review," not formal appeal.[2] *See id.*, §§ 2.C,

[1] The DOC's Administrative Custody policy was amended effective April 2022; Little has produced two versions of the policy. *See* (Docs. 83-1, 83-2).

[2] *See* (Doc. 74-3) (letter from DOC personnel informing Staats that "appeal of placement on [the RRL] is not permitted"). Little now claims that an appeal process exists because inmates can generally "challenge their placement" before the PRC (Doc. 85, ¶ 2). However, the policy he

*(continued on next page)*

2.D, 4.B.

**B. Staats's RRL Status**

In 2017, Staats was the "self-proclaimed mastermind" of a riot in a Delaware prison that led to the death of a correctional officer. When he arrived in Pennsylvania DOC custody on February 25, 2019, he was immediately placed in AC. On April 16, he was also placed on the RRL, and that decision was communicated to him at a custody review on April 17. *See* (Docs. 38-3, 38-5 through 38-9). Between April 17, 2019, and January 3, 2024, the PRC considered Staats's custody status on at least 50 occasions, most of which were preceded by meetings that Staats either attended or explicitly declined to attend. *See generally* (Docs. 83-9 through 83-63).

On July 21, 2021, Staats was enrolled in a "step-down" program, during which his RRL status was temporarily suspended, and he was permitted access to the general population. During this time, he was permitted to walk in the prison without restraints, had a prison job, ate

---

cites does not confer a right of appeal; it only states that the PRC "may make a recommendation" to a Facility Manager regarding an inmate's RRL status. *See* DC-ADM 802, § 4.B.2.

with other inmates, and was granted access to the commissary, among other privileges. A description of the program indicated that upon successful completion, Staats "may be reviewed for RRL removal." Staats completed the program "without incident" or disciplinary sanction. *See* (Doc. 73-1, ¶¶ 4-7; Doc. 74-2).

Staats was recommended for removal from the RRL by at least seven different prison personnel; however, defendant Little ultimately "vetoed" Staats's removal from the RRL. *See* (Doc. 83-27, 83-28). In verified discovery responses, Little now states that he did so because of the 2017 riot and because he believed the "Intensive Management Unit (IMU), a newly developed program consisting of six phases over a three-year period," was appropriate to ensure that Staats's removal would not jeopardize prison safety. *See* (Doc. 83-64, ¶ 3).

**C. Reviews of RRL Status**

Staats was initially told "in the beginning of March 2022" that he was being released to the general population." After "a few weeks," he received a notice informing him of Little's veto, which did not explain the reason for the veto. (Doc. 73-1, ¶¶ 8-13). The DOC's records indicate that on March 22, 2022, Staats was told that he was being "process[ed] for

RRL," and he was "advised," apparently in error, that "he can appeal." *See* (Doc. 83-30).

At some point between April 13 and April 19, Staats was transferred from SCI-Phoenix to SCI-Benner Township. Between April 19 and May 31, Staats's PRC met on a weekly basis. On some occasions, Staats refused to participate; at others, he requested and received various accommodations, including a TV, two weekly phone calls, a radio, and an electronic tablet. *See* (Docs. 83-32 to 83-37). On May 31, 2022, the PRC conducted a "90-day review" of his custody status. Staats was listed as being in administrative custody due to his "danger to/from others." Staats "refused to be seen out of cell PRC . . . [w]hen seen at his cell, [he] had no questions or concerns for PRC." *See* (Doc. 83-38).

At some point prior to August 10, 2022, Staats was placed in the IMU program. At a PRC meeting on that date, the program was explained to him, and he was given "programming" to complete in his cell. However, at the next meeting on September 7, 2022, Staats "stated that he would no longer continue to participate in the IMU program." *See* (Docs. 83-42, 83-43).

By January 2023, Little was no longer acting in the position of

Secretary of Corrections. The next 90-day review was apparently held on January 25, 2023[3]; Staats was "offered an out-of-cell review and declined." He had received "below-average housing reports" and was still refusing to participate in prison programming. (Doc. 83-48). Another 90-day review was held on April 19; "an out-of-cell review was offered and declined," and Staats stated that "he had no concerns for the Committee." (Doc. 83-52). At the next 90-day review on July 12, Staats was still refusing to participate in programming, and was again reported to have "no concerns" for the PRC. (Doc. 83-55). On September 5, 2023, he received a disciplinary sanction, which led to the further revocation of various privileges through November 18, 2023. *See* (Docs. 83-56 through 83-60 (including a November 16, 2023, 90-day review)). Staats was ultimately transferred back to Delaware on January 25, 2024.

Notwithstanding these meetings, Staats attests in a declaration that he received no "reasons, explanations, hearing, or justification" for his placement in administrative custody after March 2022. He claims that despite requesting explanations at multiple facilities, members of

[3] Although another 90-day review would have been timely in August 2022, we have not found documentation of this review in the record.

his PRCs "didn't know why [he] was there." *See* (Doc. 73-1, ¶¶ 8, 11-21).

## IV. DISCUSSION

"Due process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Prolonged solitary confinement may implicate a protected liberty interest. *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020). In such cases, the Fourteenth Amendment requires an "'informal, nonadversary review' at which the prisoner has the opportunity to state his views." *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

Staats argues that, by these standards, Little's March 2022 veto of his RRL removal violated his due process rights. However, while prolonged administrative custody can implicate a protected liberty interest, the fact of RRL status does not. *See*, *e.g.*, *Bowen v. Ryan*, 248 F. App'x 302, 304 (3d Cir. 2007); *Bramble v. Wetzel*, No. 4:20-CV-2394, 2022 WL 55021, at *9 (M.D. Pa. Jan. 5, 2022). Thus, Little did not have to

specifically explain his March 2022 veto; he only had to provide the process due to any inmate who is in prolonged administrative custody.

A jury could reasonably find that after Staats was returned to the RRL in March 2022, he did not receive a genuine hearing on his status until his May 31, 2022, 90-day review.[4] However, absent other evidence showing that they are inadequate, these 90-day reviews satisfy the due process rights of inmates in administrative custody.[5] *See Shoats*, 213 F.3d

---

[4] Between March 22 and May 31, Staats had several documented interactions with his PRC. However, contrary to Little's argument that any meeting in which the PRC sought Staats's input constitutes a "hearing," *see* (Doc. 84 at 5-6), it is not clear that these interactions gave Staats a genuine opportunity to challenge his custody status. *See*, *e.g.*, (Doc. 83-30 (apparently directing Staats to "appeal" at a later date)); *see Shoats*, 213 F.3d at 145 (inmate must be permitted to "present his views" for the consideration of the decisionmaker). The hearings must provide a path to "meaningful review" of the inmate's custody status, not just offer the inmate an opportunity to speak. *See*, *e.g.*, *Johnston v. Wetzel*, 431 F. Supp. 3d 666, 684-85 (W.D. Pa. 2019).

[5] As noted above, one of the scheduled 90-day reviews is not documented in the record. However, there is no evidence that Little was personally involved in any such omission, *see Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988), and placement in administrative custody without due process is only actionable if imposed for an extended period. *See Washington-El v. DiGuglielmo*, 419 F. App'x 275, 278 n.2 (3d Cir. 2011). For the same reasons, Staats would have no viable claim regarding his administrative custody prior to admission in the step-down program; regardless, the record indicates that he received periodic reviews during that period. *See*, *e.g.*, (Doc. 83-12, 83-13).

at 145; *Huertas v. Sec'y Pennsylvania Dep't of Corr.*, 533 F. App'x 64, 67 (3d Cir. 2013). Here, it is undisputed that Staats "refused to be seen out of cell" for the May 31 review, and there is no evidence that the procedure for this review was inadequate.

Staats repeatedly claims that he never "received a reason" for his AC status after March 2022. *See*, *e.g.*, (Doc. 73-1, ¶¶ 13, 14, 17). If he means that he never received an explanation why his completion of the step-down program was deemed insufficient to remove him from the RRL, his frustration is understandable. However, that would not be a violation of his constitutional rights, because he has no due process right to challenge RRL status, and because confinement in administrative custody could be based on his past crime(s) "even if he . . . had committed no misconduct" since then. *See Shoats*, 213 F.3d at 146 (quoting *Hewitt*, 459 U.S. at 474); *Huertas*, 533 Fed. Appx. at 66 n.6. If he means that despite the numerous PRC reviews, he was never given any "reason" why he was in administrative custody, no reasonable jury could agree with him. He had claimed to be the "mastermind" of a prison riot and then refused to participate in the IMU program to which he was assigned. Given these facts, his conclusory attestations do not create a genuine

dispute of fact on this point. *See Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.") (citation omitted).

Staats's claim might be better understood as an argument that there was no purpose to his continued AC status because he had completed the step-down program and various prison officials "sympathized" with him or endorsed his removal from AC. *See*, *e.g.*, (Doc. 73-1, ¶¶ 20, 21; Doc. 91 at 1-2). Whatever the merits of that argument, it does not show a violation of his due process rights, and it cannot justify judicial review of prison officials' judgments about his risk to prison security. *See Hewitt*, 459 U.S. at 474.

## V. CONCLUSION

For the foregoing reasons, summary judgment will be granted to Little, and we need not address his arguments regarding qualified immunity. An appropriate order follows.

Dated: September 10, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge